IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

VINCENT BEST                    §
                                §
v.                              §          C.A. NO. C-11-011
                                §
KEITH ROY                       §

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a federal prisoner currently incarcerated at the Federal

Correctional Institution in Three Rivers, Texas.  (D.E. 1).  On January 14, 2011, he

filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2241.  Id.  Pending

is Respondent's motion to dismiss, (D.E. 17), which was converted into a motion

for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  (D.E. 19).  After the conversion, the parties were given until June 7,

2011 to present any further materials pertinent to summary judgment.  Id. at 2.

Respondent filed a motion for summary judgment.  (D.E. 20).[1]  Petitioner filed

testimonials regarding his character, (D.E. 21), and a brief in opposition to

Respondent's pending motion.  (D.E. 22).  For the reasons stated herein, it is

respectfully recommended that Respondent's motion for summary judgment be

---

[1] Respondent's motion to dismiss is nearly identical to his motion for summary judgment, and shares the same attachments; the only difference between the two motions is that the latter includes references to the legal standard for summary judgment and slightly altered headings. Compare (D.E. 17) with (D.E. 20).

granted, and this habeas action be dismissed.

## I. JURISDICTION

Section 2241 petitions must be filed in the district wherein the prisoner is incarcerated.  Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).  Petitioner is incarcerated in Live Oak County, Texas, and jurisdiction is therefore proper in this Court.  28 U.S.C. § 124(b)(6).

## II. PETITIONER'S ALLEGATIONS

Petitioner argues that his due process rights were violated when he was sanctioned by the Federal Bureau of Prisons ("BOP") for a disciplinary infraction before his competency was assessed by mental health experts, despite the fact that officials knew or should have known of his serious psychological problems.  (D.E. 1, at 3-5).  He further argues that prison officials erred in failing to conduct a sufficiently thorough interview of witnesses to the alleged incident.  Id. at 6. Petitioner also contends that various officers committed perjury in filing false reports and submitting false testimony to the hearing at which he was found guilty. Id. at 8.  Finally, he submits that there was no evidence to support his conviction and suggests that mitigating evidence in the form of character testimonials by eight prison officials should have lessened the sanctions or resulted in the dismissal of charges.  Id. at 10-11.  As relief, Petitioner asks that his case be "remanded" to the

BOP, id. at 12, so that he can obtain access to the witnesses he sought for his hearing, (D.E. 22, at 6), though he indicates elsewhere that he desires his sanctions dismissed and his good-time returned.  (D.E. 1, at 5).  In his response to the motion for summary judgment, he also petitions the Court to order that he be given a lower security classification as well.  (D.E. 22, at 6).

### III.  SUMMARY JUDGMENT EVIDENCE

The following account is based on Petitioner's factual allegations and the records submitted by the parties.

On or about July 6, 2009, Petitioner was transferred to the Federal Correctional Institution in Fort Dix, New Jersey, a low security institution, after serving thirteen years in a maximum security facility.  Id. at 1.  A week later, on July 13, 2009, he sought medical assistance for "a serious mental defect."  Id.  On July 17, 2009, the psychology department conducted an initial review and concluded that Petitioner required immediate medical treatment for the mental and emotional trauma caused by the transition and by other mental problems.  Id.

On July 22, 2009, Dr. Marantz, a licensed psychologist, and Dr. Knoakes, an intern in psychology working under Dr. Marantz' supervision, provided a counseling session to treat Petitioner's anxiety, paranoia, insomnia, and "irritability," followed by two to three further sessions in the subsequent weeks.

Id. at 2; (D.E. 1-1, at 11).

On August 6, 2009, Officer Gallop observed Petitioner in the shower area in his boxers, carrying a towel and soap container, during the evening "count."  Id. at 1, 3.  Petitioner was taken to Lieutenant Kaough's office, where he began shouting. Id. at 3.  After Lieutenant Kaough instructed Petitioner to remain quiet, he responded by cursing loudly and threatening him and the other officers present.  Id. When he continued to act belligerently, Lieutenant Kaough ordered Officer Tay to place him in hand restraints and escort him to the Special Housing Unit for threatening staff, insolence, and refusing to obey a direct order.  Id. at 3-4.

On August 7, 2009, Lieutenant Watson completed an investigative report concerning the incident, noting that Petitioner declined to request a witness, but did ask to speak to the psychology department.  (D.E. 17-1, at 15).[2]  He concluded that Petitioner was properly charged because "the officer had nothing to gain by fabricating the report" and referred the incident to a Unit Discipline Committee. Id.  On August 10, 2009, the Committee completed a report on the incident, relating that Petitioner claimed in response to the charges that he was behaving peacefully at the encounter with the officers when he was unnecessarily upbraided,

_____

[2] This document and the preceding one are the only records submitted by Respondent that do not appear in Petitioner's submissions as well.  As a result, all other records are cited only to Petitioner's attachments, though all (except for the good character statements) can also be found as attachments to the answer, motion to dismiss, and motion for summary judgment.

4

at which point he became "defensive," though he never made any threats.  Id. at 14.

The Unit Discipline Committee referred the incident to a disciplinary hearing

officer ("DHO") because of the gravity of the charges and the greater authority of

the DHO.  Id.

On August 26, 2009, a hearing was held before a DHO at which Petitioner

pled not guilty to the charges.  (D.E. 1, at 2).  Petitioner requested as witnesses

Officers Tay and Gallop, as well as Dr. Knoakes.  (D.E. 1-1, at 2).  None appeared,

though Officers Tay and Gallop submitted written statements.  (D.E. 1-1, at 3-4).

At the hearing, Petitioner was advised of his rights and acknowledged he

understood them.  Id. at 3.  He was read the text of the incident report and admitted

in response that he "did say those things to" Lieutenant Kaough, but denying that

he ever "threatened the other officers."  Id.  He explained that he was still adjusting

to the atmosphere of a lower security institution and that "[t]he lieutenant got loud

with me so I went back at him in kind."  Id.  He noted that he "had been meeting

with psychology prior to this incident."  Id.

After considering the evidence, the DHO found Petitioner guilty of the

charges, basing his finding on the officers' statements and Petitioner's own

admissions.  Id. at 4-5.  For the threatening conduct, the DHO punished him with

fifteen days of disciplinary segregation, but suspended it pending good conduct.

Id. at 5.  He also sanctioned Plaintiff with the loss of thirteen days good conduct time and thirty days commissary privileges.  Id. at 5.  For the other two charges, the DHO punished him with fifteen days disciplinary segregation respectively, running concurrent with the other sanctions.  Id.  Explaining his reasons for the sanctions, the DHO noted that Petitioner's efforts to obtain treatment from the psychology department "in order to adjust to a more open environment ... have been taken into account," but that it did not "excuse your behavior in this instance."  Id.  He noted that he was imposing "lenient sanctions because of your overall positive institutional adjustment."  Id.

Petitioner appealed the finding on October 18, 2009, arguing that his due process rights were violated by the DHO's failure to request a psychiatric evaluation and asking that the sanctions be vacated as a result.  Id. at 9.  In response, Dr. Marantz wrote that he had conferred with the DHO "and informed him that you were seen in counseling in regards to your difficulty adjusting."  Id. at 10.

On November 20, 2009, Regional Director Norwood rejected the appeal.  Id. at 12.  After reciting the evidence against Plaintiff, he noted that the DHO denied his request for Dr. Knoakes, the psychology intern, to testify as a witness that he was mentally unstable, because "a psychology department intern is not permitted to

testify about your mental status in a professional capacity." Id.  He wrote that "[a]t no point did you indicate a lack of mental competence to either commit the misconduct[] referenced in the incident report or to defend yourself from the charges against you." Id. at 13.

On December 7, 2009, Petitioner appealed again, reciting the same claims. Id. at 14.  Harrell Watts, an administrator for national inmate appeals, denied the appeal on April 16, 2010, noting that the ruling was based upon the greater weight of the evidence and concluding that "[y]ou provide no credible evidence you were unable to appreciate the nature and quality or the wrongfulness of [your] acts or lacked the ability to understand the nature of the disciplinary proceedings, or to assist in [your] defense at the proceedings." Id. at 15.

Petitioner submits the statements introduced at his hearing to attest to his good character, which are collected from various prison officials and other individuals who all spoke of his work-ethic, efforts to rehabilitate himself, and participation in various correctional programs, such as suicide watch, reintegration programs, food service, legal education, and military law enforcement. Id. at 16-25; (D.E. 21, at 2-15).

# IV.  DISCUSSION

Respondent moves for summary judgment on the grounds that sufficient evidence supported the sanctions imposed on Petitioner, that no mental health evaluation was required prior to his sentencing, and that no perjury took place. (D.E. 17).  Petitioner opposes the motion, reiterating his arguments from the petition and denying officials' account of his actions offered at the disciplinary hearing, as well as Respondent's description of the hearing itself.  (D.E. 22).

## A.      Respondent's Motion To Expand The Record Should Be Granted.

Rule 7 of the Rules Governing § 2254 Cases allows for a party in a habeas case to expand the record with "additional materials relating to the petition" as long as "the party against whom the additional materials are offered" is given "an opportunity to admit or deny their correctness."  A court may apply this rule to § 2241 cases as well.  Rule 1(b) of the Rules Governing § 2254 Cases; see also Ortloff v. Fleming, 88 F. App'x 715, 717 (5th Cir. 2004) (per curiam) (unpublished) (applying Rule 6 of the Rules Governing § 2254 to a § 2241 case); Aguayo v. Harvey, 476 F.3d 971, 976 (D.C. Cir. 2007) (applying Rule 7 to a § 2241 case).

Here, Respondent has moved that the record be expanded to include a declaration by Martin Joseph Sweaney.  (D.E. 17, at 1-2).  Through his position at

the BOP, he has access to prison records, and has attached several documents

regarding Petitioner's disciplinary hearings and subsequent appeals.  (D.E. 17-1).

These records relate directly to the petition.  Moreover, Petitioner received the

documents as attachments to Respondent's answer and motion to dismiss, (D.E.

16, 17), but did not file any response disputing their contents or authenticity.

Accordingly, it is respectfully recommended that Respondent's motion to

expand the record be granted.

**B.**     **The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas

corpus cases.  <u>Clark v. Johnson</u>, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations

omitted).  Summary judgment is appropriate when there is no disputed issue of

material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  Courts must consider the record as a whole, including all pleadings,

depositions, affidavits, interrogatories and admissions on file, in the light most

favorable to the non-movant.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451

(5th Cir. 2002).

The party seeking summary judgment bears the initial burden of

demonstrating the absence of a genuine issue of material fact and informing the

court of the basis for its motion by identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Hous., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

## C.  Petitioner's Claim Lacks Merit.

### 1.    The imposition of disciplinary segregation, the loss of commissary privileges, and the heightened security classification are not actionable.

As part of the relief sought, Petitioner asks that the sanctions imposed upon him be dismissed.  (D.E. 1, at 5).  These sanctions included being placed in segregation and losing commissary privileges.  (D.E. 1-1, at 5).  He also asks that his security classification be returned to its former level.  (D.E. 22, at 6).  None of these restrictions represent atypical, significant deprivations that could encroach upon any constitutionally protected liberty interest.  Sandin v. Conner, 515 U.S. 472, 486 (1995) ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) ("[Petitioner's] 30 day commissary and cell restrictions ... do not represent the type of atypical, significant deprivations in which a state might create a liberty interest."); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003) ("an inmate has no protectable liberty interest in his classification") (citations omitted).

Thus, it is respectfully recommended that Petitioner's challenge to his reduction in commissary privileges, his placement in disciplinary segregation, and his elevated security classification do not invoke liberty interests and should

11

therefore be dismissed.

### 2. Petitioner's due process rights were not violated by the failure to conduct a competency examination.

Petitioner maintains that the DHO was required by law to suspend his hearing until a competency evaluation could take place because there were clear indications that he may have lacked the requisite mental capacity to be found guilty of the charges.  (D.E. 1, at 3-5).  In reply, Respondent argues that there were no such indications, that Petitioner was in fact competent to proceed, and that no hearing was therefore required.  (D.E. 17, at 13).

The Supreme Court has explained that "[prison] disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted); Broussard v. Johnson, 253 F.3d 874, 876 (5th Cir. 2001) (per curiam) (citing Wolff).  In Wolff, the Supreme Court held that due process requires an inmate facing a disciplinary action be provided: (1) a written notice of the disciplinary action charges, at least 24 hours before the hearing; (2) a written statement by the fact finder of the evidence and reasons for the disciplinary action; and (3) an opportunity to present evidence and call witnesses in his defense, if not unduly hazardous to institutional safety or correctional goals.  418 U.S. at 564-66.

To support this claim, Petitioner relies upon a federal regulation, which

requires that

> [i]f it appears at any stage of the disciplinary process that
> an inmate is mentally ill, staff shall refer the inmate to a
> mental health professional for determination of whether
> the inmate is responsible for his conduct or is
> incompetent.  Staff may take no disciplinary action
> against an inmate whom mental health staff determines to
> be incompetent or not responsible for his conduct.

28 C.F.R. § 541.10(b)(6).  The following provision establishes that an individual

lacks responsibility for his conduct "if, at the time of the conduct, the person, as a

result of a severe mental disease or defect, was unable to appreciate the nature and

quality of the wrongfulness of his acts."  28 C.F.R. § 541.10(b)(6)(i).  An

individual is incompetent when he "lacks the ability to understand the nature of the

disciplinary proceedings, or to assist in his defense at the proceedings."  28 C.F.R.

§ 541.10(b)(6)(ii).

       As a preliminary matter, it should be noted that Respondent's insistence

"that what Best stated to the DHO was less than that he was mentally ill," (D.E. 17,

at 13), while possibly true, misses the point.  Section 541.10(b)(6) does not

contemplate disciplinary proceedings halted only when inmates explicitly

announce at their hearings that they are mentally unfit to continue.  See Wood v.

Quarterman, 572 F. Supp. 2d 814, 817 (W.D. Tex. 2008) ("a system which requires

an insane person to first make a 'substantial showing' of his own lack of mental

capacity without the assistance of counsel or a mental health expert, in order to obtain such assistance is, by definition, an insane system"), vacated on other grounds by Wood v. Thaler, __ F. Supp. 2d __, 2011 WL 2022557 (W.D. Tex. 2011).

Respondent's observation that Petitioner never "specifically cited" this provision is equally irrelevant.  By its plain terms, the section does not demand that prisoners invoke it, but rather presumes that prison officials will follow its dictates when circumstances make them appropriate.  Indeed, it is even more implausible that an inmate truly in need of a competency evaluation would reference the precise chapter and verse of the federal register than that he would plead his own insanity.  Petitioner's interpretation of the provision–that it compels disciplinary officers to order a competency evaluation if there is reason to believe one is merited–is far stronger than Respondent's on this point.

Nevertheless, it cannot be said that Petitioner's constitutional rights were violated by the failure to call for a mental health examination here.  First, there is no compelling reason to believe that the DHO should have suspended the disciplinary proceedings in order to have Petitioner's mental health examined.  On the contrary, his own articulate and well-researched petition does not suggest the work of an individual who cannot appreciate the nature and quality of the

wrongfulness of his acts.  Moreover, his petition does not evidence an individual who lacks either the ability to understand a disciplinary hearing, or the capacity to assist in his own defense.  See Harden v. Sherman, No. 05-356, 2006 WL 3814767, at *4 (W.D. Pa. Dec. 27, 2006) (unpublished) ("His own factual averments in the petition, however, establish that he was able to understand the proceeding and to participate in his defense" for purposes of

§ 541.10(b)(6)).

Indeed, Petitioner's own descriptions of his mental problems do not reflect the type of psychological impairment typically associated with incompetency.  The anxiety, paranoia, insomnia and irritability that accompanied his adjustment from a high security facility to a lower security institution, while no doubt real and potentially severe, are not generally the sort of conditions that impair one's faculties to such an extent that participation in a disciplinary hearing is impossible. See Davis v. United States, No. 2:03CR144-M, 2009 WL 927186, at *12 (N.D. Miss. Apr. 2, 2009) (unpublished) (court had no constitutional duty to conduct a competency hearing in a criminal trial, despite allegations of "anxiety, insomnia, [and] paranoia").

On the contrary, a review of the record as a whole, with emphasis on Petitioner's own submissions, lends itself to the view that a normally exemplary

inmate became destabilized by his transfer and lashed out with a rare outburst.  The change in his circumstances may well have given rise to the mental state which allowed him to have this momentary lapse in judgment.  However, that explanation does not demonstrate that he was thereby rendered "mentally ill" such that the DHO had an obligation to halt his hearing, nor does it support the assumption that, if he had, a psychologist would have absolved him of responsibility for his actions.  On the contrary, this account strongly confirms the propriety of the DHO's decision to regard Petitioner's mental and emotional difficulties, and his efforts to effectively confront them, as mitigating evidence in the determination of sanctions.

The DHO's decision is further bolstered by a consideration of the standard for competency that applies to criminal defendants.  By that standard, "[a] defendant is considered legally competent if he has: 1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and 2) a rational as well as a factual understanding of the proceedings against him."  See United States v. McKnight, 570 F.3d 641, 648 (5th Cir. 2009) (citations omitted).  The record indicates that Petitioner was competent under this criminal standard, which is more favorable to the accused than that afforded inmates in a prison disciplinary hearing.  See generally Wolff, 418 U.S. at 556.

Finally, and perhaps most importantly, the provision relied upon by

Petitioner is, contrary to his evident belief, not a law but a regulation.  See generally Handley v. Chapman, 587 F.3d 273, 276-79 (5th Cir. 2009) (discussing separate provision of Chapter 28 issued by BOP in its discretion as "an implementing regulation") (citations omitted), cert. denied __ U.S. __, 131 S. Ct. 71 (2010).  As such, its violation does not implicate a constitutional right and does not give rise to a claim cognizable on federal habeas review.  Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (citations omitted); accord Stanley v. Foster, 464 F.3d 565, 569 (5th Cir. 2006) ("'a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process'") (quoting Myers).  Because the rule that a mental health examination must be ordered by a DHO is issued by the BOP, Petitioner's claim cannot be redressed through this petition.

Accordingly, it is respectfully recommended that Petitioner's due process rights were not violated by the failure to conduct a competency examination.

**3.    There is no indication that any officials perjured themselves.**

Petitioner claims that Lieutenant Kaough committed perjury by falsely stating in the incident report that he threatened Officers Tay and Gallop.  (D.E. 1, at 8).  To substantiate the perjury charge, he argues that the statements offered by the officers do not mention the threats, and that neither officer reported the incident

17

to their superiors, as required by BOP policy.  Id.  Respondent argues in opposition that the officers' accounts simply address different events, and therefore have no bearing on the veracity of Lieutenant Kaough's statement.  (D.E. 17, at 14).  In the response to the motion for summary judgment, Petitioner adds that the officers lied in claiming that he was escorted to Lieutenant Kaough's office because he walked there of his own volition.  (D.E. 22, at 2).

Respondent is correct on both counts.  The absence of any comment on the alleged threats to Officers Tay and Gallop in their statements does not suggest that Lieutenant Kaough was lying in his.  There is no evidence that this omission stemmed from a desire to avoid complicity with perjury.  Likewise, there is nothing in the record to support a presumption that they failed to report the incident for the same reason, especially given the fact that the threats were purportedly made in the presence of their commanding officer and thus would not have required such a report.

In any event, though Petitioner now insists that he "never threaten[ed] anyone, nor was I ever belligerent," (D.E. 22, at 2), he conceded at his disciplinary hearing that he made the threatening statements to Lieutenant Kaough for which he was punished.  (D.E. 1-1, at 3).  In his statement, Lieutenant Kaough describes angry statements issued to a staff-member (as well as "insolence"), so it is highly

18

unclear how Petitioner would have been found innocent of the charges even if the threats to Officers Tay and Gallop were discounted.  Petitioner's position now that the account of his statements was false is simply irrelevant, for he may not attack the propriety of a proceeding which relied upon his own admissions by changing his story in retrospect.

Moreover, inasmuch as the majority of the petition is concerned with demonstrating that Petitioner should not be held responsible for his actions as a result of mental and emotional instability, it seems to speak to some awareness that he committed regrettable acts.  It is difficult to reconcile that position with his insistence that the evidence of his wrongdoing was entirely false.  Finally, Petitioner suggests that the officers' statements are belied by his character testimonials.  (D.E. 22, at 5).  This argument does not withstand scrutiny; an otherwise commendable prisoner can clearly suffer a momentary lapse in judgment just as much as one with a history of misconduct can.

Because there is no evidence to support the perjury allegation, and substantial evidence to rebut it, it is respectfully recommended that Petitioner's perjury claim be dismissed.

19

**4.     Petitioner was not wrongly convicted at his disciplinary hearing.**

Petitioner argues that there was insufficient evidence to support the DHO's finding of guilt.  (D.E. 1, at 10).  In federal habeas petitions, review of the evidentiary support for a hearing officer's decision is extremely limited; due process requires only "some evidence to support the findings made in the disciplinary hearing."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985); see also Broussard, 253 F.3d at 877 ("Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision.") (citation omitted).  Even where there is no direct evidence and the existing evidence is meager, the findings may still be sufficient to support disciplinary sanction.  Hill, 472 U.S. at 457.  A federal court should not disturb a hearing officer's decision unless the petitioner can show that it was arbitrary and capricious.  Id.; Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (citation omitted).  Specifically, the Fifth Circuit has explained that an offense report by itself, written by an officer with firsthand knowledge, is "some evidence" to support the prison disciplinary board's finding of guilt.  Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

In light of these standards, Petitioner's belief that Lieutenant Kaough's "description of the alleged conduct contained in the incident report is unsupported"

does not help his case, as the report required no support in order to substantiate the charges.  In any event, though, the report <u>was</u> supported in substantial part by the other two officers' accounts, whatever minor discrepancies Petitioner now highlights.  Even more devastatingly, it was supported by his own admission that he made threatening statements to Lieutenant Kaough.  (D.E. 1-1, at 4-5).  Consequently, the charges were manifestly substantiated by "some evidence" and it is therefore respectfully recommended that the petition be denied to the extent it challenges the sufficiency of the evidence.

### 5.     Petitioner's remaining claims are without merit.

Petitioner lodges several other claims, none of which have merit.  He suggests that BOP failed its duty to conduct sufficiently thorough interviews of witnesses, but he does not indicate who they failed to interview, nor what information would have been presented if they had.  The four individuals apparently present at the incident (Petitioner and the three officers) gave detailed accounts of their impressions.

Petitioner alleges that he "asked and was refused his witness" at the disciplinary hearing.  (D.E. 22, at 3).  Presumably, he refers to Mr. Knoakes, as that is the only individual the parties have mentioned as a potential witness on his behalf.  (D.E. 1-1, at 2).  Although inmates have a right to call witnesses to testify

in their defense at prison disciplinary hearings, that right is limited by the demands of valid correctional goals.  <u>Wolff</u>, 418 U.S. at 564-66.  The explanation for Mr. Knoakes' absence from the hearing–that BOP does not allow interns to testify to the competence of inmates–stems from a reasonable correctional policy, and there was therefore no due process violation.  <u>See</u> <u>generally</u> <u>United States v. Rothman</u>, No. 08-20895-CR, 2010 WL 3259927, at *4, 16 (S.D. Fla. Aug. 18, 2010) (discussing limited expertise of psychology intern to make determination of competency for a criminal defendant).  Lastly, Petitioner has not alleged that he sought and was denied Dr. Marantz' appearance as a witness, despite acknowledging that he supervised Mr. Knoakes in his psychological treatment and thereby confirming that he would have been a more appropriate witness.

Petitioner complains that the character evidence he submitted should have led to a lesser penalty.  The testimonies he presented in this regard are wildly adulatory.  Nevertheless, they were duly taken into account by the DHO, who explicitly noted that the punishment he handed down was lighter than it would have been were it not for Petitioner's positive attitude and contributions to prison life.  (D.E. 1-1, at 5).  In a disciplinary hearing no less than in a criminal trial, a defendant has at most a constitutional right to the "meaningful consideration" of mitigating evidence, <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 246 (2007), and

this much Petitioner clearly received.

Petitioner mentions the confrontation clause in various places in his petition, though he does not specify how it was violated.  The most likely confrontation clause claim suggested by the record is that he was deprived of the opportunity to question Officers Tay and Gallop, as well as Lieutenant Kaough, whose statements were used to find him guilty.  He had no such right at his disciplinary hearing. Baxter v. Palmigiano, 425 U.S. 308, 322 (1976).  The record demonstrates that Petitioner was accorded the due process to which he was entitled, and that his conviction and punishment were adequately supported by the evidence. Accordingly, it is respectfully recommended that Petitioner's remaining claims be dismissed.

## V.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion to dismiss and his motion for summary judgment, (D.E. 17, 20), be granted and that the petition, (D.E. 1), be dismissed with prejudice in all respects.

Respectfully submitted this 14th day of June 2011.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).